| | |
|---|---|
| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 1:17-CR-154(6) |
| § | |
| ARTHUR JERROD JENKINS § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Arthur Jerrod Jenkins's ("Jenkins") *pro se* Motion for Reduction of Sentence (#883). The Government filed a Response (#893) in opposition. Jenkins filed a Reply (#896) stating that his motion is "for a reduction in sentence under the Second Chance Act" rather than a motion for compassionate release. United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Jenkins's motion. Having considered the pending motion, the Government's Response, Jenkins's Reply, Probation's recommendation, the record, and the applicable law, the court is of the opinion that Jenkins's Motion to Reduce Sentence (#883) should be denied.

I.   Background

On July 12, 2018, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a nine-count Third Superseding Indictment, charging Jenkins in Count One with Conspiracy to Possess with the Intent to Distribute a Controlled Substance (Cocaine Base a.k.a. "Crack" Cocaine) — Aiding and Abetting, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; in Count Two with Conspiracy to Possess with the Intent to Distribute a Controlled Substance (Cocaine HCl) — Aiding and Abetting, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; and in Count Seven with Conspiracy to Possess a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(o). On August 14, 2018, Jenkins pleaded guilty to

Counts One and Seven of the Third Superseding Indictment before United States Magistrate Judge Keith Giblin pursuant to a binding plea agreement. On September 27, 2018, the court adopted the Report and Recommendation of Judge Giblin and adjudged Jenkins guilty of Counts One and Seven of the Third Superseding Indictment. On January 24, 2019, the court sentenced Jenkins to a term of 168 months' imprisonment as to Count One and 168 months' imprisonment as to Count Seven, to be served concurrently, in accordance with the terms of the plea agreement. The court imposed a sentence of 5 years of supervised release as to Count One and 3 years of supervised release as to Count 7, with the terms to run concurrently. Count Two was dismissed on the motion of the Government. On June 17, 2021, the court reduced Jenkins's sentence of imprisonment from 168 to 150 months.

Jenkins is currently housed at a Residential Reentry Center ("RRC") in Tyler, Texas. His projected release date is October 26, 2027. Jenkins now seeks a sentence reduction due to his rehabilitation efforts, his disagreement with a sentence enhancement applied in his Presentence Investigation Report ("PSR"), and his assertion that his plea was involuntary because he entered into his plea agreement under duress.

II.     Analysis

    A.     Reduction in Sentence under the Second Chance Act

The Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657, as amended by the First Step Act of 2018, Pub L. No. 115-391, § 404, 132 Stat. 5194 (codified in part at 18 U.S.C. § 3624(c) and 34 U.S.C. § 60541), provides funding and resources for post-imprisonment rehabilitation services to support individuals reentering society after incarceration, with the goal of reducing recidivism and enhancing public safety. It authorizes funding for drug treatment, job

training and placement, educational services, and other services or support needed to rehabilitate prisoners and reduce recidivism. *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring).

The Act addresses placement in a community corrections facility such as a halfway house as well as home confinement. 18 U.S.C. § 3624(c)(1), (2). It grants the Director of the Bureau of Prisons ("BOP") discretion to place a prisoner in a community corrections facility for up to twelve months, instead of limiting that time to six months as permitted by the prior law. *Id.* at § 3624(c)(1); *Jones v. Bergami*, No. EP-19-CV-254-DB, 2019 WL 4889735, at *3 (W.D. Tex. Oct. 2, 2019). It also directs the BOP to issue new regulations to ensure that placements in community correctional facilities are: "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6); *Jones*, 2019 WL 4889735, at *3.

The Second Chance Act directs the establishment of a federal prisoner reentry strategy to help prisoners prepare for release and successful reintegration into the community. 34 U.S.C. § 60541(a). The Act further states that the reentry strategy shall "provide incentives for prisoner participation in skills development programs." *Id.* at § 60541(a)(1)(G).

> (2) Incentives for prisoners who participate in reentry and skills development programs which may, at the discretion of the Director, include –
> 
> (A) the maximum allowable period in a community confinement facility; and
> 
> (B) such other incentives as the Director considers appropriate (*not including a reduction of the term of imprisonment*.)

*Id.* at § 60541(a)(2) (emphasis added). In *United States v. Reyes*, the court rejected a prisoner's request for a one-year sentence reduction under the Second Chance Act, explicitly stating, "[t]his Act does not provide the Court with authority to reduce Defendant's sentence." No. 15-10119-EFM, 2021 WL 3401343, at *2 & n.12 (D. Kan. Aug. 4, 2021) (citing *United States v. Calderon*, 801 F. App'x 730, 731 (11th Cir. 2020) (finding that the Second Chance Act did not authorize a district court to order early release from prison and thus the district court lacked jurisdiction to grant the request)). Hence, contrary to Jenkins's contention, the Second Chance Act does not provide a mechanism or procedure for seeking or obtaining a sentence reduction. Moreover, in this instance, Jenkins is already residing in a residential reentry center under the auspices of the BOP.

The Second Chance Act also establishes a pilot program for elderly offenders which allows certain prisoners over the age of 60 to be released to home detention until the expiration of the prison term to which the offender was sentenced. *See* 34 U.S.C. § 60541(g)(1)(A); *Calderon*, 801 F. App'x at 730, 731; *Clayton v. Puentes*, No. 1:19-cv-00284-DAD-JDP, 2020 WL 4060571, at *1, n.2 (E.D. Cal. May 26, 2020), *adopted by* 2020 WL 4059161, at *1 (E.D. Cal. July 20, 2020). At the outset, the court notes that Jenkins is not eligible for this program because he is not over the age of 60, as he is only 53 years old. In any event, as the Eleventh Circuit stated in *Calderon*, "the Second Chance Act does not authorize a federal court to order the BOP to release a prisoner—the Act only states the Attorney General 'may' release eligible elderly offenders." 801 F. App'x at 732 (citing 34 U.S.C. § 60541(g)(1)(B)). The court elaborated, "[m]oreover, the Second Chance Act makes no mention of federal courts and does not grant any authority to the federal courts." *Id*. Thus, to the extent that Jenkins is requesting a modification or reduction in

his sentence, the court has no authority to grant the relief sought under the Second Chance Act. Administrative decisions under the Second Chance Act do not provide the court with any basis for a sentence reduction. *United States v. Lopez*, 624 F. App'x 234, 235 (5th Cir. 2015).

Accordingly, Jenkins's request that the court reduce his sentence under the Second Chance Act is without merit.

B.  Reduction in Sentence under the First Step Act (18 U.S.C. § 3582(c)(1)(A))

1.  Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

>
> factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other*

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

*grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." *Id*. § 1B1.13(b). These categories are:

(1) the medical circumstances of the defendant;

(2) the age of the defendant;

(3) the family circumstances of the defendant;

(4) whether the defendant was a victim of abuse while in custody;

(5) other reasons similar in gravity to those previously described; and

(6) an unusually long sentence.

*Id*. § 1B1.13(b)(1)-(6). The Fifth Circuit has clarified, however, that "prisoners have extraordinary and compelling reasons for relief 'only when they face some extraordinarily severe

7

exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner.'" *Austin*, 125 F.4th at 692 (quoting *Escajeda*, 58 F.4th at 186).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles:

(1) the defendant must have exhausted his administrative remedies;

(2) "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3) the reduction must be consistent with the Commission's applicable policy statements; and

(4) the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

### 2. Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for reduction in sentence unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory"). The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A). Accordingly, before seeking relief from the court, a defendant must first

submit a request to the warden of his facility to move for a sentence reduction on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468. "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025). Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *Id*.

Here, the Government invokes § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief. The Government points out that "the statute requires Jenkins to exhaust all administrative remedies with the Bureau of Prisons" but notes that he "does not identify any administrative remedy sought." In his motion, Jenkins makes no mention and gives no indication that he attempted to exhaust his administrative remedies, and there is no evidence before the court that he has sought relief from the warden or other BOP personnel. Thus, the court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *see United States v. Harper*, No. 24-30275, 2024 WL 4664018, at *1 (5th Cir. Nov. 4, 2024) ("[B]ecause the Government

9

properly raised the rule requiring exhaustion in the district court, 'the court *must* enforce the rule.'"); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Gomez*, No. 2:17-cr-41-KS-MTP, 2025 WL 420531, at *2 (S.D. Miss. Feb. 6, 2025) ("Congress used clear language: all requests for compassionate release must be presented to the [BOP] before they are litigated in the federal courts."); *United States v. York*, No. 17-00086-BAJ-RLB, 2024 WL 3771442, at *3 (M.D. La. Aug. 13, 2024) (recognizing that a court may not modify a term of imprisonment if a defendant has not filed a request with the BOP); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").

Therefore, due to his failure to exhaust his administrative remedies, the court does not have the authority to reduce Jenkins's sentence under the First Step Act.

III.    Conclusion

Based on the foregoing analysis, Jenkins's *pro se* Motion for Reduction of Sentence (#883) is DENIED.

SIGNED at Beaumont, Texas, this 4th day of August, 2025.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE